1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ORVAL FLANNERY,                      No.  2:22-cv-01518 DB P

12                  Plaintiff,

13        v.                              ORDER AND FINDINGS AND
                                          RECOMMENDATIONS
14   HOLSTEIN, et al.,

15                  Defendants.

16

17        Plaintiff, an inmate proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.

18   Plaintiff proceeds on a claim that defendants violated his Fourth Amendment rights when plaintiff

19   was subject to an involuntary cavity search.  Presently before the court is defendants' fully

20   briefed motion to dismiss.  (ECF No. 13.)  For the reasons set forth below, the undersigned will

21   recommend that the motion be denied.

22                              **BACKGROUND**

23   **I.      Procedural History**

24        Plaintiff initiated this action with the filing of the complaint.  (ECF No. 1.)  The

25   undersigned screened the complaint and determined it stated cognizable claim for an

26   unreasonable search but failed to state cognizable claims for deliberate indifference to plaintiff's

27   medical needs, due process, or equal protection.  (ECF No. 5.)  Plaintiff was given the option to

28   proceed with the complaint as screened or to file an amended complaint.  (Id.)  Plaintiff opted to

1    proceed immediately, voluntarily dismissing all other claims (ECF No. 7) and service was

2    ordered on defendants.  (ECF No. 8.)  Defendants filed the instant motion to dismiss.  (ECF No.

3    13.)

4         **II.        Allegations in the Complaint**

5         Plaintiff indicates that, at all relevant times, he was an inmate at the Amador County Jail.

6    (ECF No. 1 at 2.)  Plaintiff names Correctional Sergeant Holstein, Jackson Police Department

7    ("JPD") Lieutenant Daniel Barb, JPD Investigator Robert Harmon, and Amador Sutter Hospital

8    ("SAH") Nurse Jane Doe as defendants in this action.  (Id. at 5.)

9         The complaint contains the following allegations: while a pretrial detainee at Amador

10   County Jail, plaintiff was transferred to SAH with two other inmates as it was believed the three

11   inmates had overdosed on fentanyl.  (Id. at 2.)  After plaintiff was "medically cleared," defendant

12   Holstein asked plaintiff to submit to a digital cavity search.  (Id.)  Plaintiff refused but stated he

13   would submit to alterative search options.  (Id.)  Defendant Holstein spoke with defendants Barb

14   and Harmon in the hallway.  (Id.)  When Holstein returned, he changed the position of the

15   handcuffs on plaintiff and the two other inmates so that they were all laying on their sides.  (Id.)

16   Defendant Doe later entered and performed digital cavity searches on all of the inmates.  (Id.)

17   Plaintiff was "the last inmate . . . search[ed] and . . . tried to protest both verbally and by shifting

18   [his] body . . . ."  (Id. at 3.)  Plaintiff feared contracting Hepatitis C as one of the other inmates

19   had it and defendant Doe "used the same glove for the other 2 inmates and did not change it when

20   she came to [plaintiff]."  (Id.)  Defendant Doe eventually succeeded in performing the cavity

21   search "and spent a significantly longer period of time during [plaintiff's] search as with the other

22   inmates."  (Id.)  Plaintiff noted defendant Barb and Harmon "standing by the open door and

23   openly laughing."  (Id.)  As a result of this search, his rectum bled due to a tear.  (Id.)

24        Plaintiff claims that there was no warrant for the digital cavity search and that it was done

25   against his will.  (Id. at 4.)  He asserts that he did not knowingly take fentanyl but that he drank

26   from a cup of water and later woke up in an ambulance.  (Id.)  Plaintiff states that he faced no

27   disciplinary action.  (Id.)

28   ////

2

In the complaint, plaintiff argues that defendants Holstein, Barb, Harmon, and Doe violated his rights by "either ordering or failing to intervene in the digital cavity search without a warrant and against [plaintiff's] will." (Id.) Plaintiff states that he seeks one million dollars ($1,000,000) in damages but does not include any other details regarding the monetary relief sought. (Id. at 8.)

## MOTION TO DISMISS

Defendants argue that plaintiff's claim for unreasonable search should be dismissed because defendants have qualified immunity as government officials. (ECF No. 13 at 3.) First, defendants claim that plaintiff has not pled sufficient facts in his complaint to show that his Fourth Amendment rights have been violated by an unreasonable search. (Id. at 4.) Defendants argue that the search was reasonable because it was done by a medical professional and defendants where not actually involved in the search. (Id. at 4-5.) Second, defendants argue that even if plaintiff's allegations did state a claim, they do not show violation of a clearly established right because a reasonable officer would not think the manner of the search was unreasonable as it was done by a medical professional. (Id. at 6.)

Plaintiff opposed the motion, arguing that it was not normal hospital practice for a nurse to conduct a body cavity search against his will and that the nurse only did the search on the instruction of defendants. (ECF No. 17 at 1-2.) Plaintiff primarily cites California state law to support his argument that the search was unlawful because it was conducted without a warrant. (See id. at 2-4.) Defendants submitted a reply. (ECF No. 18.)

## LEGAL STANDARDS

### I.      Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the

1   complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  A dismissal

2   may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient

3   facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

4   699 (9th Cir. 1988).

5          A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on

6   its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

7   when the plaintiff pleads factual content that allows the court to draw the reasonable inference

8   that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

9   (2009).

10          In evaluating whether a complaint states a claim on which relief may be granted, the court

11   accepts as true the allegations in the complaint and construes the allegations in the light most

12   favorable to the plaintiff.  Hishon, 467 U.S. at 73.  Pro se pleadings are held to a less stringent

13   standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curium).

14   Nevertheless, a court's liberal interpretation of a pro se complaint may not supply essential

15   elements that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th

16   Cir. 1982).  In addition, the court need not assume the truth of legal conclusions cast in the form

17   of factual allegations.  U.S. ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

18   Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or

19   that the defendants have violated the . . . laws in ways that have not been alleged."  Associated

20   Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

21          In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court may consider

22   material that is properly submitted as part of the complaint, matters properly subject to judicial

23   notice, and documents that are not physically attached to the complaint where their authenticity is

24   not contested and the plaintiffs' complaint relies on them.  See Swartz v. KPMG LLP, 476 F.3d

25   756, 763 (9th Cir. 2007)); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

26   **II.       Qualified Immunity**

27          Qualified immunity is a defense that must be pled by a defendant official.  Harlow v.

28   Fitzgerald, 457 U.S. 800, 815 (1982).  It is an "entitlement not to stand trial or face the other

burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009)).  Even if a constitutional violation occurred, prison officials are entitled to qualified immunity if they acted reasonably under the circumstances.  See Friedman v. Boucher, 580 F.3d 847, 858 (9th Cir. 2009); Anderson v. Creighton, 483 U.S. 635, 646 (1987).  When government officials are sued in their individual capacities for civil damages, a court must "begin by taking note of the elements a plaintiff must plead to state a claim . . . against officials entitled to assert the defense of qualified immunity."  Iqbal, 556 U.S. at 675.

The doctrine of qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) (quoting Harlow, 457 U.S. at 818).  The qualified immunity analysis involves two parts, determining whether (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct.  Saucier, 533 U.S. at 201; see Pearson, 555 U.S. at 232, 236; see also Bull v. City & County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010).  A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 at 202; Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010).  These prongs need not be addressed in any particular order.  Pearson, 555 U.S. at 236.  "Prison officials conducting violative searches are entitled to qualified immunity if 'the searches are reasonably related to a legitimate penological goal, or [if] the defendants reasonably could have believed that the searches were conducted to further such a purpose.'"  Vaughan v. Ricketts (Vaughan II), 950 F.2d 1464, 1468 (9th Cir. 1991) (citing Tribble v. Gardner, 860 F.2d 321, 328 (9th Cir. 1988)) (alteration in original).

////

////

////

**ANALYSIS**

**I.      Plaintiff Has Pled Sufficient Facts to State a Claim for Unreasonable Search**

Defendants argue that plaintiff has failed to plead sufficient facts to state a claim for an unreasonable search under the Fourth Amendment because the search was done by a medical professional and was therefore reasonable.  (ECF No. 13 at 4-5.)

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend IV.  The reasonableness of a search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that search entails."  Bell v. Wolfish, 441 U.S. 520, 559 (1979); Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010).  "The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections are not extinguished upon incarceration."  Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993).  However, lawful incarceration necessarily entails limitations upon many of the rights enjoyed by ordinary citizens.  Hudson v. Palmer, 468 U.S. 517, 524 (1984); Pell v. Procunier, 417 U.S. 817, 822 (1974).  "[A]n intrusion into the human body implicates an individual's 'most personal and deep-rooted expectations of privacy.'"  United States v. Fowlkes, 804 F.3d 954, 961 (9th Cir. 2015) (quoting Winston v. Lee, 470 U.S. 753, 760 (1985)).  "[P]hysical rectal examinations of prisoners, when carried out by trained medical staff under sanitary conditions, are at times 'a necessary and reasonable concomitance of . . . imprisonment.'"  Lule v. Aguilar, No. ED CV 21-2057-JWH(E), 2023 WL 6813721, at *4 (C.D. Cal. Feb. 8, 2023) (quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 43 (1st Cir. 2009)).

In the Ninth Circuit, a digital bodily cavity search only complies with the Fourth Amendment if: (1) prison officials have reasonable cause to search the inmate, Vaughan II, 950 F.2d at 1468-69, (2) the search serves a valid penological need, Tribble, 860 F.2d at 325, and (3) the search is conducted in a reasonable manner, Vaughan v. Ricketts (Vaughan I), 859 F.2d 736, 741 (9th Cir. 1988), overruled other grounds by Koch v. Rickets, 68 F.3d 1191 (9th Cir. 1995).  See also Wiley v. Serrano, 37 Fed. Appx. 252, 253 (9th Cir. 2002)[1]; Nunez, 591 F.3d at

---

[1] This unpublished decision is being cited for persuasive value only.  See 9th Cir. R. 36-3.

1227 ("Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (quoting Bell, 441 U.S. at 559)).

    Defendants stated that this court found that reasonable cause and a valid penological interest existed to conduct a cavity search in the court's order to proceed in forma pauperis. (ECF No. 13 at 4 (citing ECF No. 5 at 6).)  However, what the court said was "[i]t is possible defendants had reasonable cause and a valid penological interest in conducting a cavity search." (ECF No. 5 at 6 (emphasis added).)  For the purposes of this motion to dismiss, the court will focus on whether the search was conducted in a reasonable manner.

### A.  Was the Search Conducted in a Reasonable Manner?

    Determining the reasonableness of a digital cavity search requires that the court consider "issues of privacy, hygiene, and the training of those conducting the searches . . . ."  Vaughan I, 859 F.2d at 741; see Fowlkes, 804 F.3d at 963 (holding that courts "consider a variety of factors including hygiene, medical training, emotional and physical trauma, and the availability of alternative methods for conducting the search").  "[T]he process for removing suspected contraband from a detainee's body, 'if it is to comport with the reasonableness standard of the fourth amendment, must be conducted with regard for the subject's privacy and be designed to minimize emotional and physical trauma.'"  Fowlkes, 804 F.3d at 964 (quoting United States v. Cameron, 538 F.2d 254, 258 (1976)).

    Here, plaintiff has alleged facts sufficient to plead that the search was not conducted in a reasonable manner.  On a motion to dismiss, the court must take the facts alleged as true and in the light most favorable to the plaintiff.  Hishon, 467 U.S. at 73.  Plaintiff has stated facts to indicate the search was not conducted in a sanitary manner because the nurse used the same glove on three inmates, one of which may have had Hepatitis C.  (ECF No. 1 at 3.)  Additionally, the search was conducted in front of two other inmates while defendants watched from the doorway and laughed (id.), indicating plaintiff's privacy was not considered and without regard for any emotional trauma plaintiff might experience.  See Fowlkes, 804 F.3d at 964.  The search was also performed after plaintiff was "medically cleared" and after he offered to consent to other, less

1    invasive, procedures to determine if he was carrying drugs.  (ECF No. 1 at 3.)  Since plaintiff was

2    medically cleared, there was no emergency requiring a quick resolution.  See Lule, 2023 WL

3    6813721, at *5.

4           Therefore, plaintiff has plead sufficient facts to state a claim for an unreasonable cavity

5    search.

6    **II.**       **Plaintiff has Alleged a Violation of a Clearly Established Right**

7           Defendants argue that even if plaintiff has pled sufficient facts to show his Fourth

8    Amendment rights were violated, defendants are entitled to qualified immunity and this case

9    should be dismissed because there is no "clearly established" right.  (ECF No. 13 at 3-4.)

10           To determine whether a right is clearly established involves considering whether it would

11    be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  See

12    Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[A]s we explained in Anderson[v. Creighton, 483

13    U.S. 635 (1987)], the right allegedly violated must be defined at the appropriate level of

14    specificity before a court can determine if it was clearly established"); Saucier, 533 U.S. at 202.

15           "The 'clearly established law' test requires more than an alleged 'violation of extremely

16    abstract rights.'"  Tribble, 860 F.2d at 324 (quoting Anderson, 483 U.S. at 639).  Rather, "[t]he

17    contours of the right must be sufficiently clear that a reasonable official would understand that

18    what he is doing violates that right."  Id. (quoting Anderson, 483 U.S. at 640).  "In other words,

19    'in the light of preexisting law the unlawfulness must be apparent.'"  Id. (citation omitted).

20    "Clearly established" means the statutory or constitutional question was "beyond debate" such

21    that every reasonable official would understand that what he is doing is unlawful.  See District of

22    Columbia v. Wesby, 583 U.S. 48, 63 (2018); Vos v. City of Newport Beach, 892 F.3d 1024, 1035

23    (9th Cir. 2018).  To be "clearly established," a rule must be dictated by controlling authority or a

24    robust consensus of cases of persuasive authority.  Wesby, 583 U.S. at 63; Vos, 892 F.3d at

25    1035).  Courts must define the law with a "high degree of specificity" when applying qualified

26    immunity.  Wesby, 583 U.S. at 63 (citation omitted).  The key question is "whether the violative

27    nature of particular conduct is clearly established" in the specific context of the case.  Vos, 892

28    F.3d at 1035 (emphasis omitted) (citation omitted).

Here, the right at issue is plaintiff's right to have a search conducted in a reasonable manner, considering factors such as "hygiene, medical training, emotional and physical trauma, and the availability of alternative methods for conducting the search." Fowlkes, 804 F.3d at 963. It is clearly established that rectal searches be conducted in a reasonable manner. See Vaughan II, 950 F.2d at 1468-69 ("By 1984, it was clearly established that the Fourth Amendment requires that rectal searches in prisons be conducted . . . in a reasonable manner." (citing Bell, 441 U.S. at 559). "[I]ssues of privacy, hygiene, and the training of those conducting the searches are relevant to determining whether the manner of search was reasonable." Vaughan I, 859 F.2d at 741. The Ninth Circuit has found that involuntary bodily cavity searches were unreasonable where they were done on a table that was unsanitary, medical personnel did not wash their hands between searches, the area was visible to other inmates and prison personnel, and some personnel made jokes and insulting comments. Id.

Therefore, the right to have a digital cavity search done in a reasonable manner that is sanitary, relatively private and performed in a manner that does not cause unnecessary emotional trauma is clearly established. Viewing the complaint's allegations in a light favorable to plaintiff, as the court must at this stage, defendants violated this clearly established right.

### III.     Defendants Were Involved in the Search

Finally, defendants allege that they are entitled to qualified immunity because a nurse actually performed the search and defendants were not involved. (ECF No. 13 at 5-6.) "[O]fficers may not avoid the requirements of the Fourth Amendment by inducing, coercing, promoting, or encouraging private parties to perform searches they would not otherwise perform." George v. Edholm, 752 F.3d 1206, 1215 (9th Cir. 2014). Plaintiff's allegations that defendants ordered the search are enough to allege their involvement. Lule, 2023 WL 6813721, at *7.

### CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 13) be denied.

////

1    In addition, IT IS HEREBY ORDERED that the Clerk of the Court shall assign a district

2 judge to this case.

3    These findings and recommendations are submitted to the United States District Judge

4 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5 after being served with these findings and recommendations, any party may file written

6 objections with the court and serve a copy on all parties.  Such a document should be captioned

7 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

8 objections shall be filed and served within fourteen days after service of the objections.  The

9 parties are advised that failure to file objections within the specified time may waive the right to

10 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11 Dated:  May 28, 2024

12

13

14                                                              DEBORAH BARNES
                                                                  UNITED STATES MAGISTRATE JUDGE
15

16

17

18
       DB:18
19     DB/DB Prisoner Inbox/Civil Rights/S/flan1518.MTD.fr

20

21

22

23

24

25

26

27

28

10